IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: APPLICATION OF CATERPILLAR CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE, SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, ENTIDAD REGULADORA<br><br>FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | CIVIL. NO. 22-MC-00568 (SCC-MDM) |

**OPINION AND ORDER**

This matter comes before the Court on a *revised* Application by Caterpillar Crédito (hereinafter "Caterpillar" or "Petitioner") pursuant to 28 U.S.C § 1782 for an Order to conduct discovery from Banco San Juan Internacional ("BSJI" or "Respondent") for use in a foreign proceeding ("the Revised Petition"). (Docket No. 80). The matter was referred to me by the presiding district judge for disposition. (Docket Nos. 45 & 56). For the reasons explained below, the Revised Petition is **GRANTED** as follows.

I.  **Relevant Procedural Background**

Caterpillar filed an original Application pursuant to 28 U.S.C. § 1782 seeking targeted discovery from BSJI to support its defenses in a Curaçao case brought by Mrs. Carolina Elizabeth Várady de Bellosta ("Mrs. Bellosta") against Caterpillar. As will be explained more fully below, said Application was the subject of various hearings before the undersigned, and essentially became moot as the parties engaged in settlement efforts to resolve it amicably.

To put the pending Revised Petition into context, in February 2022, Caterpillar filed a request for arbitration against Mrs. Bellosta, seeking to enforce personal guarantees made by her husband, Mr. Carlos Marcelino Bellosta Pallares

("Mr. Bellosta"), in favor of Caterpillar as collateral in exchange for a multimillion-dollar loan.[1] Following the arbitration request, Mrs. Bellosta filed suit in Curaçao against Caterpillar, and nominally against Mr. Bellosta, seeking to invalidate the Personal Guarantees (hereinafter the "Curaçao Proceeding").

In an effort to assist it with the defenses it had raised in the Curaçao Proceeding, Caterpillar filed a § 1782 Application with this Court, which initially sought three categories of financial records and documents from BSJI. (Docket No. 1). According to Caterpillar, these records bore on: (1) Mr. Bellosta and Mrs. Bellosta's (hereinafter the "Bellostas") location[2] at the time that Mr. Bellosta executed the Personal Guarantees; (2) the Bellostas' location at the time Mrs. Bellosta filed the Curaçao Proceeding; and (3) Mr. Bellosta's control over VMSC.

BSJI filed an opposition to the original Application. (Docket No. 26). Soon after the Application was filed, the Bellostas and VMSC (together, the "Intervenors") intervened in this case with the consent of Caterpillar and filed briefs in opposition to the Application (Docket Nos. 27; 28), as well as sur-reply briefs further opposing the Application (Docket Nos. 35; 36).

On December 29, 2022, this matter was originally referred to the undersigned for the preparation of a Report and Recommendation. (Docket No. 45.) The Court

---

[1] On October 13, 2015, VMSC Curazao N.V., Venequip Curazao NV, and Solidus Investments Corporation (as Borrower) (hereinafter "VSMC") and Caterpillar (as Lender) entered into an extension of their original loan (the "VMSC Loan Agreement"). VMSC acknowledged that it owed Caterpillar $55,218,820.10 under the parties' pre-existing loan arrangements and acknowledged that the purpose of the VMSC Loan Agreement was to further increase the line of credit available to VMSC from Caterpillar to a total of $110 million (the "VMSC Loan"). Days later, on October 16, 2015, Mr. Bellosta, the most significant beneficial shareholder of the Venequip Group, gave a personal guarantee to Caterpillar (the "2015 Guarantee") to secure VMSC's obligations under the VMSC Loan.

A year later, on October 11, 2016, in connection with an amendment to the VMSC Loan, Mr. Bellosta gave a second personal guarantee (the "2016 Guarantee," and together with the 2015 Guarantee, the "Personal Guarantees") on substantially similar terms as the 2015 Guarantee, personally guaranteeing VMSC's obligations under the amended VMSC Loan. Under the Personal Guarantees, Mr. Bellosta contractually committed to pay Caterpillar the entire sum outstanding under the VMSC Loan as it became due or upon acceleration (if not paid by VMSC), including interest and any costs incurred by Caterpillar in seeking payment under the Personal Guarantees.

By late 2017, Venequip Group began defaulting on its loan payments and Caterpillar began collection efforts, which have purportedly proven futile.

[2] "Location" is the term used by the parties, though it appears that what is actually meant is "residence."

scheduled a hearing, the aim of which was to resolve the Application in an expedited manner that was beneficial to all parties and served the interests of justice. During the hearing, the Court heard Caterpillar's arguments in support of the original Application, as well as BSJI and the Intervenors' opposition thereto. An in-depth discussion of Caterpillar's individual discovery requests, and the objections raised by BSJI and the Intervenors to each request, quickly ensued. In pertinent part, the parties discussed at length the concepts of proportionality and relevance of the lengthy asset discovery sought by Caterpillar in the original Application.

In the end, without formally ruling as much, the Court all but found some of the discovery requests included in Caterpillar's original Application to be unduly intrusive, burdensome, and overbroad. Recognizing that denying outright Caterpillar's original Application would have resulted in a new petition being filed by Caterpillar, and the parties having to begin the process anew, the Court offered a more practicable option, and with the parties' consent, assisted them in various attempts to meet and confer. The Court thus held off on ruling on the original Application, as submitted, and held several hearings akin to settlement conferences.

During that process, and in response to BSJI and the Intervenors' stated concerns over the discovery sought, some of which the Court found to be reasonable, Caterpillar revised and narrowed the scope of the requested discovery in the original Application. Moreover, the parties agreed that BSJI would produce redacted copies of Mr. Bellosta's monthly bank account statements and all communications between BSJI and Mr. Bellosta during a one-year period to aid Caterpillar in its jurisdictional defense in the Curaçao Proceeding. While the parties were meeting and conferring, they also agreed to hold in abeyance the resolution of Caterpillar's remaining discovery requests. Ultimately, however, the parties were unable to reach an agreement with respect to the remaining discovery sought in the original Application and on March 8, 2023, they filed an "Informative Motion Regarding Impasse." (Docket No. 55.)

At the same time, by mutual agreement, the parties decided to reserve the adjudication of the outstanding discovery disputes pending the decision of a

jurisdictional hearing in Curaçao, which could have mooted the majority of the discovery requests made here by Caterpillar. That decision was rendered on April 3, 2023, but the parties informed the Court that it would be the subject of appeal. In the meantime, the Court ordered the parties to "keep [it] abreast of the status and ruling with respect to" Caterpillar's request for an interim appeal filed in the Curaçao Proceeding. (*See* Docket No. 75). In compliance with said Order, the parties informed the Court that on June 6, 2023, the Curaçao appellate court denied said request for interim appeal.

On March 8, 2023, the presiding District Judge entered an Amended Order referring Caterpillar's original Application and all pending discovery disputes resulting thereto to the undersigned for disposition. (Docket No. 56).

After several procedural matters, on September 13, 2023, the undersigned ordered Caterpillar to file a revised request for documents, namely, a revised Application pursuant to Section 1782. (Docket No. 79.) Accordingly, on September 21, 2023, Caterpillar submitted the Revised Petition (with a "Proposed Revised Subpoena") which further narrowed the requests made in the original Application to seek only the documents relevant to Caterpillar's two defenses. (Docket No. 80).

Oral Argument on the Revised Petition was held on October 12, 2023. There was agreement between the parties that several, though not all of the requests, were in fact relevant and narrowly tailored, while others might be overbroad and irrelevant. (*See* Minute Entry at Docket No. 94). Given the fact that there was some agreement between the parties, the Court invited them to meet and confer and try to reach an amicable resolution of the revised set of discovery requests. *Id*. "The purpose of reaching an agreement would be to avoid unnecessary use of judicial resources given the fact that a denial by the Court of the [Section] 1782 petition would simply prompt the filing of a revised petition, which would end up causing more delay and more expense to the parties as well." *Id*. The Court then Ordered the parties to advise it by motion as to whether they would be amenable to reaching such an agreement. *Id*.

In compliance with the Court's Order, on October 17, 2023, the parties informed the Court that they were willing to engage in good-faith negotiations towards a potential settlement that would resolve the Revised Petition (and, of course, the original Application). (*See* Docket No. 96). Consequently, the parties engaged in negotiations attempting to reach a potential settlement of the Revised Petition. The parties, however, were unable to reach an agreement that would dispose of their pending disputes. As a result, the parties return to the Court to make a final determination on the Revised Petition, as drafted.

## II.     Section 1782(a)'s statutory requirements and the *Intel* factors

Title 28, *United States Code*, Section 1782 concerns assistance to foreign and international tribunals and to litigants before such tribunals. Today's § 1782 is the product of over 150 years of Congressional effort and manifests the intent to provide "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp., Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). "Section 1782 [thus] authorizes district courts to order persons residing in their district to participate in discovery 'for use in a proceeding in a foreign or international tribunal' when an application for such discovery is made by a foreign or international tribunal, or by 'any interested person.'" *In re Porsche Automobil Holding SE*, 985 F.3d 115, 120 (1st Cir. 2021) (citation omitted); *see also In re Tovmasyan*, 557 F. Supp. 3d at 348, 352–53 (D.P.R. 2021).

The text of § 1782 provides that granting discovery is proper only if: 1) the person from whom discovery is sought "resides or is found" in the district where the court sits, 2) "the request seeks evidence (the testimony or statement of a person or the production of a document or other thing) for use in a proceeding in a foreign or international tribunal," 3) "the request is made by a foreign or international tribunal or by any interested person," and 4) the material sought is not protected by "any legally applicable privilege." 28 U.S.C. § 1782(a). *See In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018) (quotation and internal quotation marks omitted). If all of these statutory requirements are met, the district court is authorized, but *not* required, to

provide judicial assistance by permitting discovery. *Intel,* 542 U.S. at 247; *see* 28 U.S.C. § 1782(a) ("The district court . . . *may* order . . . .") (emphasis added).

In addition to these statutory requirements, the United States Supreme Court has identified four discretionary factors to guide a court's decision whether to authorize the requested discovery. They are known as the *Intel,* supra, factors: (a) "when the person from whom discovery is sought is a participant in the foreign proceeding [. . .] the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," (b) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (c) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (d) whether the requests are "unduly intrusive or burdensome" "to the extent that it should either be "trimmed" or rejected outright. *Intel*, 542 U.S. at 264-265. These discretionary factors do not "crea[te] a 'burden' for either party to meet but rather [are] considerations to guide" the court's decision. *In re Tovmasyan*, 557 F. Supp. 3d 348, 353 (D.P.R. 2021); *In re Valitus, Ltd.,* 2020 WL 6395591, at *5 (D. Mass. 2020) (quoting *In re Schlich*, 893 F.3d at 50).

In sum, a district court must first determine whether the statutory requirements are met. If they are, the district court should then consider the four discretionary factors before arriving at a decision. *In re Schlich, id.* at 46–47. "Both parties are free to argue their positions and submit evidence in support thereof, and the district court is then to consider all of that in weighing these factors." *Id.* at 50. When either party relies on a "blanket assertion" or fails to properly substantiate its contentions, "it runs the risk of not persuading the court to exercise its discretion in its favor." *In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645, at *7, n.11 (D. Mass. 2018) (quoting *In re Schlich*, 893 F.3d at 50). Yet, a court's discretion to permit discovery when all Section 1782 requirements are met "is not boundless." *In re Schlich*, 893 F.3d at 46 (quoting *Intel*, 542 U.S. at 252). Rather, courts "must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing

efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *Intel*, 542 U.S. at 252 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.,* 292 F.3d 664, 669 (9th Cir. 2002)).

Because Section 1782 is a mechanism for obtaining discovery, "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *In re Schlich*, 893 F.3d at 46 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). District courts are not required to address explicitly every factor or argument, nor is it required to issue a written order. *See United States v. Sealed 1,* 235 F.3d 1200, 1206 (9th Cir. 2000) (noting the broad discretion afforded the district courts under § 1782 and the lack of specific guidance with which to exercise that discretion); *Akebia Therapeutics, Inc. v. FibroGen, Inc.,* 793 F.3d 1108, 1112 (9th Cir. 2015).

## III. Discussion

Caterpillar claims that through its Revised Petition, it seeks narrow categories of financial information from BSJI that is central to its main defenses in the Curaçao Proceeding. More specifically, it seeks financial records relating to the Bellostas and VMSC to support its defenses that: (1) Mrs. Bellosta did not habitually reside in Curaçao when Mr. Bellosta made the Personal Guarantees at issue, and (2) Mr. Bellosta was a *de facto* director of VMSC when he made the Personal Guarantees.

Caterpillar maintains that the discovery requests included in the Revised Petition meet the statutory requirements of Section 1782, and that the discretionary factors set forth in *Intel* all weigh in favor of granting the Revised Petition. *See* 28 U.S.C. ¶ 1782; *Intel*, 542 U.S. at 264-265 (2004). Caterpillar thus requests that this Court grant the Revised Petition and allow it to serve the Proposed Revised Subpoena on BSJI. Caterpillar further requests that the Court order BSJI to produce responsive documents thereto within 14 days of service of the subpoena.

        A.     Statutory Requirements

In deciding whether to grant Caterpillar's request for discovery for use in a foreign litigation, the Court must first answer whether the Revised Petition meets the four statutory requirements of Section 1782. It is undisputed that three of those four factors are met. The first factor, whether the person from whom discovery is sought resides in the district where the court sits, is met here because BSJI is incorporated under the laws of Puerto Rico and can be found in the district of Puerto Rico. (Docket No. 1-1 at 10–11.) The third factor, whether the request is made by a foreign or international tribunal or by an interested person, is also met because Caterpillar is an interested party, namely, the defendant, in the foreign litigation at issue—the Curaçao Proceeding. *Id*. BSJI and the Intervenors do not dispute that these two factors are satisfied, nor do they seem to contest the fourth factor—that the material sought is not protected by any legally applicable privilege. So, the first, third, and fourth statutory requirements of Section 1782 are met.

The issue here lies with the remaining factor. The parties dispute whether the second factor has been met—that is, whether the Revision Petition seeks evidence "for use" in a proceeding in a foreign or international tribunal. Caterpillar claims that the requested discovery is indeed "for use" in the Curaçao Proceeding and that the documents sought in the Proposed Revised Subpoena are highly relevant and bear directly on the merits of said foreign litigation. More specifically, as noted, Caterpillar argues that the discovery sought directly pertains to two of the main defenses raised in the foreign litigation: (1) that the Bellostas were not habitual Curaçao residents at the time that Mr. Bellosta made the Personal Guarantees at issue, and (2) that Mr. Bellosta was a *de facto* director and majority shareholder of VMSC. According to Caterpillar, proving either of these defenses would mean that Mrs. Bellosta cannot take advantage of Curaçao law to annul the Personal Guarantees. Caterpillar further argues that through the Proposed Revised Subpoena, it seeks targeted banking and financial records from the Bellostas at the time that Mr. Bellosta made the Personal Guarantees to determine where they spent their time and money, and thus, where they habituall1y resided during the relevant period. In additional support for their

position, Caterpillar avers that because Mrs. Bellosta may only annul the Personal Guarantees if she were a resident of Curaçao at the time that Mr. Bellosta made the Personal Guarantees, this information is highly relevant.

Caterpillar contends that it also seeks targeted banking and financial records for VMSC to examine whether VMSC's funds were comingled with other Venequip entities controlled by Mr. Bellosta, as well as communications reflecting Mr. Bellosta's involvement in and control over VMSC. According to Caterpillar, if Mr. Bellosta was acting as a *de facto* director of VMSC at the time he made the Personal Guarantees, then, under Curaçao law, Mrs. Bellosta cannot annul the Personal Guarantees, regardless of the Bellostas' habitual residence at the time.

Based on the foregoing, Caterpillar maintains that the documents sought in the Revised Petition are highly relevant to the merits of the Curaçao proceeding and clearly meant to be "for use" in that case.

BSJI and the Intervenors argue, in turn, that Caterpillar's Revised Petition fails to satisfy the required showing of relevance and argue that the requested discovery is not "for use" in the Curaçao Proceeding. More specifically, BSJI and the Intervenors challenge the Revised Petition, arguing it is being sought for improper purposes unrelated to the foreign litigation in question, and claiming it is overbroad, and marginally relevant. They contend that the discovery seeks extensive financial records detailing wide-ranging financial records, including bank statements, and every transaction made by Mrs. Bellosta, Mr. Bellosta and VMSC for a period of three years, which is irrelevant to the Curaçao residency issue. They also claim that Caterpillar is actually seeking asset discovery, which is improper and has nothing to do with the Curaçao case nor will it aid in Caterpillar's defenses in that proceeding. It is also argued in the oppositions to the Revised Petition that the discovery sought by Caterpillar is wholly disproportionate to its needs in the foreign litigation and is being sought for impermissible purposes. Even assuming a small portion of the requested discovery is found to be relevant, BSJI and the Intervenors contend that the Revised Petition must still be denied because the requested discovery is really

intended "for use" in an arbitration case filed by Caterpillar,[3] and not the Curaçao Proceeding.

Under First Circuit precedent, Caterpillar has the burden of establishing that all the statutory requirements are met. In this case, given that the only contested factor is the second, Caterpillar must satisfy the "for use" requirement in order for the Court to even consider exercising its discretion to grant the requested relief. *In re Schlich,* 893 F.3d 40, 49 (1st Cir. 2018).

The First Circuit has found that the statutory requirement prescribing that the information sought be "for use" in a foreign proceeding incorporates a relevance requirement. *In re Schlich*, *id.* at 52. *See also Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015). The First Circuit decided that "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *In re Schlich*, supra, (citing *Certain Funds, Accounts and/or Inv. Vehicles*, 798 F.3d at 113, 120 n.7 (2d Cir. 2015)). Therefore, a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory "for use" requirement and must be denied before the court reaches the discretionary *Intel* factors. *In re Schlich*, 893 F.3d at 52.

As to admissibility, "it is well-settled that '[p]etitioners are not required to show that the information they seek would be discoverable or admissible in [foreign] litigation in order to satisfy' the 'for use' requirement." *In re Porsche Auto. Holding SE*, 2019 WL 5806913, at *5 (D. Mass. 2019), *adopted sub nom. See also In re Porsche Automobil Holding SE,* 2020 WL 813710 (D. Mass. 2020), aff'd, 985 F.3d 115 (1st Cir. 2021) (quoting *Minis v. Thomson*, 2014 WL 1599947, at *2 (D. Mass. 2014)). There is thus no requirement that a petitioner prove the admissibility of the documents sought. *See Minis v. Thomson*, No. 14-91050-DJC, 2014 WL 1599947, at *2 (D. Mass. 2014) ("Petitioners are not required to show that the information they seek would be discoverable (or admissible) in the [foreign] litigation in order to satisfy the second prong.").

---

[3] Caterpillar filed an arbitration before the International Chamber of Commerce in February 2022 seeking to enforce the Personal Guarantees by Mr. Bellosta ("ICC Arbitration").

Here, the Revised Petition has three specific document requests, each with various subsections. More precisely, Caterpillar requests from BSJI: (1) documents and records "sufficient to show banking, financing, investing, and other financial activities by Mrs. Bellosta from October 16, 2014 to June 11, 2017 . . . ," (2) documents and records "sufficient to show banking, financing, investing, and other financial activities by Mrs. Bellosta, from October 16, 2014 to June 11, 2017 . . . ," and (3) documents and records sufficient to show all banking, financing, investing, and other financial activities by VMSC from October 16, 2014 to June 11, 2017 . . . ." (Docket No. 80-1).

Throughout these proceedings, Caterpillar has explicitly stated in their pleadings and unambiguously to this Court during several hearings held, that it plans to use the requested discovery to support its defenses in the Curaçao case. It is undisputed that the Curaçao Proceeding is well underway, and the parties have extensively discussed in this case the merits of discovery concerning the Bellostas' location at the time when Mr. Bellosta issued the Personal Guarantees and the Bellostas' residence and what proof would assist Caterpillar in proving those matters. The parties have also discussed the legitimacy of Mr. Bellostas' business dealings and those of VMSC. The discovery sought in the Revised Petition is thus not plainly irrelevant.

Overall, Caterpillar has sufficiently and persuasively explained how the discovery sought might be applied in the Curaçao Proceeding as it bears directly on the merits of the defenses Caterpillar has raised therein. The Court therefore finds that Caterpillar has articulated a plausible and legitimate reason for pursuing this discovery and that the evidentiary material sought will be used in a foreign proceeding. *See In re Tovmasyan,* 557 F. Supp. 3d 348, 356 (D.P.R. 2021). For these reasons, the Court finds that the discovery Caterpillar seeks in the Revised Petition is "for use" in the Curaçao Proceeding. In meeting the "for use" second factor, Caterpillar has sufficiently met the required showing of Section 1782's statutory requirements.

But even where the four statutory requirements are met, as in this case, the district court may still deny the discovery request if it finds that the weighing of the *Intel* factors favors denial, regardless of whether the respondent has proffered reasoning for the district court to exercise its discretion. *In re Schlich*, 893 F.3d 40, 51; *Intel,* 542 U.S. 241, 264 (2004) (Even where these statutory factors are met, the court's power to order such discovery is discretionary). Courts should exercise that discretion, where the four additional discretionary factors under *Intel* are met. *See Intel* supra, 542 U.S. at 264–65.

### B.     The *Intel* Discretionary Factors

These factors do not "crea[te] a 'burden' for either party to meet, but rather [are] considerations to guide the district court's decision." *In Re Schlich*, 893 F.3d at 50. In weighing these factors, courts must first look to whether the person from whom discovery is sought is a participant in the foreign proceeding. *See Intel*, supra.

The first *Intel* factor looks to whether the target of the proposed subpoena is a party to the foreign litigation. *See Intel*, 542 U.S. at 264; *see In re Tovmasyan*, 557 F. Supp. 3d at 357. In this case, Caterpillar seeks out evidence from BSJI (and its employees). Neither BSJI nor its employees are parties to the foreign litigation, nor are they expected to be. Because BSJI is a nonparticipant in the Curaçao proceeding, it is not subject to jurisdiction in that case. As such, the discovery sought by Caterpillar "would otherwise be unobtainable absent Section 1782 aid." The first *Intel* discretionary factor is thus met and favors authorizing the requested discovery. *See In Re Porsche Automobil Holding SE*, 985 F.3d at 121 (noting that non-party status is "fact that weighs in favor of granting § 1782(a) discovery"). *In re Tovmasyan*, 557 F. Supp. 3d 348, 357 (D.P.R. 2021).

Next, the Court considers the second *Intel* factor, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. This factor mainly addresses whether the foreign tribunal or court will be receptive to the discovery sought here by Caterpillar.

The discovery Caterpillar seeks involves financial information with respect to the Bellosta's travel and spending during the relevant period and will be used for purposes of determining the residence of Mrs. Bellosta at the time when Mr. Bellosta made the Personal Guarantees and Mr. Bellosta's alleged control over VMSC. This information is relevant to Caterpillar's defenses in the Curaçao Proceeding and thus the Bellosta's liability, if any. Additionally, as argued by Caterpillar and as detailed in the two declarations by Caterpillar's retained Curaçao law expert Eric de Vries, the discovery sought in the Revised Petition is highly relevant to the merits of the Curaçao Proceeding. It thus seems apparent that the requested discovery would be of great interest to the Curaçao Court. *See In re Schlich*, 893 F.3d at 52 (noting that courts may consider relevance under the second discretionary *Intel* factor); *In re Valitus, Ltd.*, No. CIV 20-MC-91133-FDS, 2020 WL 6395591, at *7 (D. Mass. Nov. 2, 2020). Without § 1782 aid, it would be highly unlikely that Caterpillar could obtain the documents it seeks to assist with its defenses in the Curaçao Proceeding.

Moreover, BSJI and the Intervenors have not cited any cases, or authority, suggesting that the Curaçao courts would not be receptive to discovery obtained through § 1782 or would not accept the discovery that Caterpillar seeks. They have therefore not met their burden of proof. *See In re Porsche*, 985 F.3d at 120 ("[Respondents] argue about whether the [foreign] tribunal actually requested the information sought by [Claimant]. But they raise no plausible argument that the information sought would not be welcomed for use in the proceedings in that tribunal."); *In re Schlich*, 893 F.3d at 40, 50 (1st Cir. 2018) (noting that district courts may exercise their discretion to rule against a "party who relies on a blanket assertion or does not properly substantiate its contentions").

In short, Caterpillar has sufficiently demonstrated why the evidence sought here is relevant to the Curaçao Proceeding, and therefore it has sufficiently demonstrated that the foreign tribunal would be receptive to the Court's assistance.

Under the third *Intel* factor, the Court must consider whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The primary

inquiry is whether the discovery is being requested in bad faith. *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010). Here, BSJI and the Intervenors have repeatedly asserted that Caterpillar filed the Revised Petition to conduct improper and untimely asset discovery in order to determine what assets the Bellostas possess so as to know how, and if, Caterpillar will be able to collect its debt in the event of a favorable judgment in its favor. The Court finds BSJI and the Intervenor's arguments unpersuasive. Other than lodging a blanket assertion that casts a doubt on Caterpillar's intent, BSJI and the Intervenors have provided no evidence that Caterpillar's requests were made in bad faith. Furthermore, the Revised Petition is not perceptibly frivolous, and it does not appear that Caterpillar is seeking the discovery for improper means. "Absent any . . . clear indication that the discovery would undermine a specific policy of the [foreign country] or the United States or that the discovery is sought in bad faith, the third *Intel* discretionary factor . . . favors authorizing the requested discovery." *In re Tovmasyan*, 557 F. Supp. 3d at 358. Accordingly, this factor weighs in favor of granting the Revised Petition.

Moving onto the <u>fourth and final *Intel* factor</u>, the Court must consider whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Such requests "may be rejected or trimmed." *Id.* "In the § 1782 context, '[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information[,] and appear to be a broad fishing expedition of irrelevant information.'" *Sandra Holding Ltd. V. Al Saleh*, No. 18-mc91406-PBS, 2019 WL 3072197, at *3 (D. Mass. 2019) (quoting 28 U.S.C. § 1782(a)) (quoting *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp.3d 1029, 1043 (N.D. Cal. 2016)). A court may narrow a proposed discovery order if it finds that the petitioner's requests are not relevant to any party's claim or defense or proportional to the overall needs of the case. *Id.* at *5.

As the parties opposing discovery, BSJI and the Intervenors have the burden of showing that the Revised Petition would cause an undue burden. *See Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) ("When a party resists the production of evidence, it bears the burden of establishing

lack of relevancy or undue burden."). BSJI and the Intervenors contend that the materials requested in the Revised Petition are substantially overbroad and not reasonably calculated to support what BSJI understands to be Caterpillar's narrow defenses in the Curaçao litigation.

Without prejudice to any objections raised by BSJI and the Intervenors, the discovery sought does not appear at first glance to impose an excessive burden warranting that discovery be denied outright. *In re Tovmasyan*, 557 F. Supp. 3d 348, 358 (D.P.R. 2021). Caterpillar's Revised Petition involves three discovery requests or three categories of documents, two of which has six subsections, and one of which has three subsections. The requests appear to be narrowly tailored to request targeted discovery of banking, financing, investing, and other financial records from Mr. Bellosta, Mrs. Bellosta and VMSC for a discrete period, namely from October 16, 2014, to June 11, 2017, that bear directly on contested issues in the Curaçao Proceeding.

Moreover, BSJI and the Intervenors have not sufficiently explained how reviewing, collecting, and producing the discovery requested here would be so unduly intrusive or burdensome so as to warrant disfavoring its disclosure. For example, BSJI has pointed to the fact that complying with the requests would require it "to expend an enormous amount of its limited resources in a time-consuming and costly search" and hire a "third-party IT technician to properly access and extract responsive records that are almost a decade old." (Docket No. 89). Moreover, BSJI argues that the discovery requests, as drafted, "would require BSJI to divert its employees from their daily tasks and other demands to instead engage in extensive fact finding to locate responsive records." *Id.* As a general proposition, that argument is unpersuasive. Though the Court empathizes with BSJI, a purportedly small financial institution with 9 employees, these are actions that every party, big or small, must undertake to comply with discovery requests.

Additionally, courts routinely allow discovery of banking and financial records from financial institutions and the narrower Proposed Revised Subpoena lessens any burden that BSJI might have otherwise faced. *See In re Valitus, Ltd.*, 2020 WL

6395591, at *9 (petitioner's requests were not unduly intrusive or burdensome since they were "narrowly tailored" and "each of its thirteen proposed categories of documents relate to events that occurred over the course of only eleven months"); *cf. Sandra Holding Ltd.*, 2019 WL 3072197, at *4 (holding that the discovery requests were burdensome when petitioner requested production of a range of documents relating to Universal and five other companies and which covered a period of time of over thirty years). Here, the discovery requested by Caterpillar is nowhere near as extensive as in *Sandra Holding Ltd. See In re Tovmasyan*, 557 F. Supp. 3d 348, 359 (D.P.R. 2021).

On a final note, BSJI may avail itself of the protections of Fed. R. Civ. P. 45 and other rules of Federal Civil Procedure governing discovery. *In re Tovmasyan*, 557 F. Supp. 3d 348, 358 (D.P.R. 2021). *See In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *4 ("If a court orders discovery, then the Federal Rules of Civil Procedure may govern discovery; so[,] a court may use Rule 26 and other rules to protect against specific requests that are unduly intrusive or burdensome.").

In short, Caterpillar Crédito seeks routine, easily producible discovery that is relevant to its defenses in the Curaçao Proceeding and which it cannot obtain there, absent the Court's assistance. BSJI and the Intervenors have not established any particular undue burden that the Proposed Revised Subpoena would impose on BSJI. Thus, this factor also weighs in favor of granting Caterpillar's request.

On balance, the four discretionary *Intel* factors weigh in favor of granting Caterpillar's the Revised Petition.

### IV. Conclusion

For the foregoing reasons, the Section 1782 statutory requirements are met, and all four discretionary *Intel* factors weigh in favor of granting Caterpillar's request for discovery for use in a foreign litigation. The Revised Petition is thus **GRANTED**. Caterpillar, through its counsel, is granted leave to issue the subpoena to BSJI in the form appended as Exhibit 1 to the Revised Petition. (Docket Nos. 80-1). In exercising its discretion, however, the Court directs that BSJI may redact the dollar amounts of the monthly account statements requested in Request No. 1, Request No. 2, and

Request No. 3 of the Proposed Revised Subpoena, as feasible. This directive to narrow the proposed discovery responds to concerns with respect to improper asset discovery and proportionality of the discovery sought vis-a-vis the overall needs of the case and Caterpillar's defenses in the Curaçao Proceeding. BSJI shall produce documents responsive to the Revised Petition within twenty (20) days of service of the subpoena.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of June 2024.


                    *s/Marshal D. Morgan*
                    MARSHAL D. MORGAN
                    United States Magistrate Judge